In re Charlie MOORE, d/b/a Moore's Mining Company, Moore's Welding & Fabricating, MMH Investments, Debtor.

Sharon BELL, Trustee, Plaintiff,

v.

AMERITRUST COMPANY, Defendant.

Bankruptcy No. 3-81-00272.
Adv. No. 3-81-0951.

United States Bankruptcy Court,
E. D. Tennessee.

July 23, 1982.

Michael H. Shaut, and L. Caesar Stair, III, Knoxville, Tenn., for defendant.

Sharon Bell, Knoxville, Tenn., trustee.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in this adversary proceeding is whether the defendant properly perfected its security interest by filing a financing statement which shows only a trade name of the debtor. T.C.A. § 47–9–402 is the applicable statute in this controversy.

### I

The facts are not disputed. Defendant AmeriTrust Company, as successor to First Lorain Trust Company, asserts a security interest in certain of the debtor's machinery and equipment which has been liquidated by the bankruptcy trustee for $250,000.

On December 30, 1978, Charlie Moore, the debtor, executed a security agreement in favor of the First Lorain Trust Company. A financing statement covering the equipment given as security was filed with the Register of Deeds for Campbell County on January 8, 1979, and with the Tennessee Secretary of State on January 18, 1979. Both financing statements list the debtor's name as "Moore's Welding & Mining Co.," one of the debtor's assumed trade names.

The plaintiff trustee alleges that the security interest of AmeriTrust is defective because the financing statement was filed under the debtor's assumed name rather than the debtor's individual name. AmeriTrust contends that the filing provisions of the U.C.C. have been substantially complied with so that the admitted filing error is minor and not seriously misleading. T.C.A. § 47–9–402(5), *infra*.

Defendant's note dated December 30, 1978, is signed "Charlie Moore." Typed underneath the signature, one finds "Charlie Moore, dba Moore's Welding & Mining Co.," followed by the signature "Charlie Moore"

under which is typed "Sole Proprietor." The signature block of the security agreement, which is likewise dated December 30, 1978, contains the typed words "Moore's Welding & Mining Co.," followed by the signature "Charlie Moore." Three financing statements are also attached to defendant's claim. All three show the debtor as "Moore's Welding & Mining Co." The two statements which show the debtor's address as "Rt. 1, Eagle Bluff, Jacksboro, Tennessee, 37757" were filed with the Tennessee Secretary of State and with the Register of Deeds for Campbell County, Tennessee. The third, which is filed in the office of the Martin County Clerk, Inez, Kentucky, shows the debtor's address as Job, Kentucky, 41225. This third financing statement was filed because the debtor moved the security equipment from Tennessee to Kentucky at one time.

It is undisputed that the debtor in the present case has operated under several trade names. Among the names used by him are MMH Investments, Moore's Mining Company, Moore's Welding & Fabricating, Moore's Welding Company, and Moore's Welding & Mining Co., the name under which the defendant's financing statements were filed. According to his attorney, there were possibly one or two other names used by the debtor.[1]

It is noted that the name under which defendant filed its financing statement was not a name listed by the debtor in the caption of his petition.[2] The defendant intimates that this might have been intentional since "... the debtor has a personal stake in having the Court find that AmeriTrust Company's filed financing statement contained a seriously misleading error...." Defendant's Reply Brief.[3] The record does not support such a conclusion. A more logical explanation is that the debtor had used so many trade names that he could not remember all the names that he had used.[4]

Certified copies of financing statements filed with the Tennessee Secretary of State in favor of General Electric Credit Corporation of Tennessee and Stowers Machinery Corp., were introduced as Exhibit # 8 at trial. The GECC financing statement is indexed as Charles Moore d/b/a Moore's Welding & Mining Co., whereas the Stowers' financing statement is indexed under the name Charlie Moore d/b/a Moore's Welding & Mining Co. Corresponding information is typed in the signature blocks of the respective financing statements, each of which is signed "Charlie Moore."

General Electric Credit Corporation was formerly a creditor of the debtor. However, its financing statement had not been terminated as of the date of the debtor's bankruptcy petition.[5] Likewise, the financ-

1. Invoices of one creditor, Wayland Explosives and Supply, Inc., indicate two names—Moore Welding Service, 138 N. Tennessee Avenue, LaFollette, Tennessee, and Charlie Moore Welding Service, Eagle Bluff Estates, Jacksboro, Tennessee.

2. Bankruptcy Rule 106 states that the caption of every petition shall include the name of the debtor and all other names used by him within 6 years before the filing of the petition.

3. In 1979 and 1980, the Internal Revenue Service properly filed tax liens against the debtor, Charlie Moore, in the Register's Office of Campbell County, Tennessee. Moore's present tax liability totals approximately $102,000.00.

    AmeriTrust asserted a third party complaint against the Internal Revenue Service in its pleading in response to the Trustee's complaint herein. It is AmeriTrust's contention that I.R.S. would have priority to the proceeds from the liquidation of the security equipment if the

trustee prevails and that it would be "inequitable and inconsistent with the Court's authority under 11 U.S.C. § 510(c)(1), to permit I.R.S. to advance in priority ahead of AmeriTrust Company in view of its actual knowledge of the prior, perfected lien of AmeriTrust Company." An order has been entered dismissing the United States of America, which was the proper third party defendant, from this proceeding.

4. The debtor is uneducated, in the formal sense, being able to sign his name but unable to read.

5. In accordance with the provisions of T.C.A. § 47-9-404(2) (Supp.1981), the filing officer shall remove the financing statement and any continuation statement from the files, mark them "terminated" and send same to the secured party on presentation of a termination statement.

ing statement in favor of Stowers Machinery Corp., was also still a matter of record when the debtor's bankruptcy petition was filed. However, the lien of Stowers was satisfied from the proceeds of a loan from the defendant herein to the debtor.

Both of these financing statements were filed in 1978, prior to the filing of the defendant's financing statements. Consequently, the defendant contends that a creditor consulting the appropriate records to determine if there were liens against the personalty of Charlie Moore would find financing statements indexed under that name which reflect the trade name Moore's Welding & Mining Co., which, of course, is the name under which the defendant's financing statements are filed. The defendant further contends that any reasonably diligent creditor should or would thereafter check the files for filings indexed under the name Moore's Welding & Mining Co.

## II

T.C.A. § 47–9–402 provides in apposite part:

  (1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

    .     .     .     .     .

  (3) A form substantially as follows is sufficient to comply with subsection (1):
Name of debtor (or assignor) ⸺⸺⸺
Address ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺
Name of secured party (or assignee) ⸺
Address ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

  1. This financing statement covers the following types (or items) of property:

    .     .     .     .     .

  (5) A financing statement substantially complying with the ·requirements of this section is effective even though it contains minor errors which are not seriously misleading.

The dispute between the trustee and the defendant AmeriTrust involves a determination of whether filing under the name "Moore's Welding & Mining Co." is seriously misleading in a case in which the name [6] of the secured debtor is Charlie Moore.

This court has previously recognized that the purpose of a financing statement is to afford notice to creditors of the possibility of the existence of a security interest. *In re Wilhoit*, 6 B.R. 574 (Bkrtcy.E.D.Tenn. 1980). *Wilhoit* involved a financing statement filed under the trade name of the debtor. The debtor's name was Hugh F. Wilhoit, but the financing statements of two of his creditors were filed under his trade name, Central Tire and Supply. Despite the fact that the secured debtor had done business for a considerable period of time under his trade name in a community of 20,000—30,000 people, this court determined that the security interests of the defendant creditors were unperfected and subordinate to the rights of the trustee.

The basis for the decision in *Wilhoit* was simply the fact that a prospective creditor of the debtor could not discover the existence of prior security interests filed under the debtor's trade name by checking the index under the debtor's name. The allowance of the filing of financing statements under a name other than the actual name of the debtor would frustrate the underlying purpose of the U.C.C. filing requirements.

**6.** Subsection (1) of the statute under review does not explicitly require that the name of the debtor be given in the financing statement, although it does require that the financing statement be signed by the debtor. The fact that the statute does not explicitly require the name of the debtor prompted one court to hold that filing under a secured debtor's trade name was sufficient despite the fact that the filing was misleading. *In re Bengston*, 3 U.C.C.Rep.Serv. 283 (D.Conn.1965). This view has been rejected. *Arra v. First Federal Savings & Loan Association of Osceola County, (In re James Wells Enterprises, Inc.)*, 21 U.C.C.Rep.Serv. 900 (Bankr.M.D.Fla.1977). The presence of the proper name of the secured debtor is implicit since the filing officer must index statements according to the name of the debtor. T.C.A. § 47–9–403(4) (Supp.1981).

*In re Firth*, 13 U.C.C.Rep.Serv. 343, 346 (M.D.Ga.1973).

The case of *In re Osborn*, 6 U.C.C. 227 (Bankr.W.D.Mich.1969), involved a financing statement filed under the trade name "H & M Distributing Co," rather than under the debtor's name (Howard Henry Osborn). The court noted that the draftsmen of the Uniform Commercial Code intended that the Code should be liberally construed and applied to promote to underlying policies and purposes.[7] However, the court concluded that the notice filing intended by the draftsmen of the U.C.C. could not be accomplished if financing statements reflect assumed names of secured debtors. The filing offices must be furnished with a "name of the debtor" that will provide reasonable notice of the existence of a security interest. The rationale for disallowing filing under the trade name of a secured debtor is explained as follows:

There is no limit for the number of assumed names that can be obtained. Some businessmen have a propensity for assumed names and may use a different one for each phase of their activities, adding and discarding as suits their desires. It is not unusual for a bankrupt to list four or more assumed names which he has used over the years. Therefore, if we would allow financing statements to be filed under assumed names, subsequent creditors and interested parties may be unduly misled. An assumed name may be used . . . and discarded shortly thereafter . . . even the debtor may have forgotten that he once used such a name. To allow filing under assumed names would place a burden on searching creditors and other interested parties not intended by those who drafted the UCC. Certainly to require the use of the real name of the debtor meets one of the purposes of the Act, "to simplify, clarify and modernize the law governing commercial transactions." U.C.C. § 1102, *supra. Id.* at 232.

The *Osborn* court concluded that the financing statement filed under the debtor's assumed name was inadequate. The secured creditor's interest was unperfected and subordinate to the rights of the bankruptcy trustee.

■ However, it should be noted that filing under the trade name of the secured debtor is not *per se* insufficient to perfect a security interest. Another court has declared that as a general rule:

[A] financing statement, in order to perfect a security interest, must, in the case of an individual, or individuals, doing business under a trade name show the name of the individual legally responsible for the debt unless the trade name and the individual debtor's name are so similar that a prospective creditor, upon seeing the trade name in the records, would be alerted that there might be a prior security interest in the involved collateral. *Matter of Fowler*, 407 F.Supp. 799, 803 (W.D.Okla.1975).

One of the first reported decisions recognizing the adequacy of a financing statement filed under the trade name of the debtor in circumstances in which there is a similarity between the trade name and the actual name of the debtor is *In re Platt*, 257 F.Supp. 478 (E.D.Pa.1966). The secured debtor's name was Henry Platt, but the financing statement was indexed under the name "Platt Fur Co." The debtor also did business under the trade name "Kenwell Fur Novelty Co." The court noted:

The use of Kenwell as the debtor would clearly have left FCA without a perfected security interest. However, the name Platt Fur Co. is sufficiently related to the name of the debtor, Henry Platt, to require those who search the records to make further investigation. Furthermore, the Referee found that the name was "not seriously misleading," the criterion for effectiveness under section 9–402(5).

No evidence has been presented to us which would require reversal of the Referee on this point. Accordingly, we hold that designation of the bankrupt as Platt

**7.** U.C.C. § 1–102(1).

Fur Co. was sufficient identification of the debtor. *Id.* at 482.

The decision in *Platt* has been criticized on the basis that it "promotes carelessness" and "invites deceptive practices." *Citizens Bank v. Ansley,* 467 F.Supp. 51, 55 (M.D.Ga. 1979), aff'd 604 F.2d 669 (5th Cir. 1979). The *Ansley* court offers an example illustrating the simplicity involved in deceiving prospective creditors by allowing a secured debtor to employ the device of a similarly named business entity to procure an initial loan. An unscrupulous debtor could obtain a second loan from an unsuspecting, unsophisticated lender who either does not discover the financing statement filed under the debtor's trade name or the second creditor may be so unfortunate as to overlook the nexus between the similarly named business entity and the unscrupulous debtor. In its criticism of the *Platt* decision, the court also noted:

> Furthermore, Platt not only assumes that prospective creditors, no matter how unsophisticated, will discover an index card for a similar trade name but also assumes that they will connect the business entity listed with the individual they are investigating. These assumptions place a heavy burden on prospective creditors although the Code contemplates that those seeking to perfect security interests bear the burden of properly filing. Burden shifting of this sort is for the legislature, not the courts. *Id.* at 55.

The case of *In re Kittyhawk Television Corp.,* 516 F.2d 24 (6th Cir. 1975), involved two separate corporations which had the same directors, officers, and shareholders. The first corporation, Kittyhawk Broadcasting Corporation, purchased television equipment from RCA for an amount in excess of $750,000.00. The payment was secured by chattel mortgages. Financing statements naming Kittyhawk *Broadcasting* Corporation as the debtor were duly filed. The assets of the first corporation were transferred to the second corporation, Kittyhawk *Television* Corporation, which also assumed the liabilities of the first corporation. New notes and Transfer of Equity papers were executed in favor of RCA. One of the Transfer of Equity documents was filed with the Ohio Secretary of State, but no other filing under the name of Kittyhawk Television Corporation was made.[8]

In a contest between the trustee in bankruptcy for Kittyhawk Television Corporation and RCA, which claimed a perfected security interest, the court of appeals reversed the district court. The appellate court held that the RCA security interest was perfected *vis-a-vis* the bankruptcy trustee by virtue of the financing statements filed under the name of Kittyhawk *Broadcasting* Corporation. The court noted that RCA was under no obligation to amend its financing statements and that "the names of the debtor were sufficiently similar that a third party could reasonably be expected to be put on notice or at least to be required to make further inquiry." *Id.* at 28. The difference in the names of the two corporations was deemed to be minor and not seriously misleading.

The dispositive question will not always be whether or not a reasonable search under the debtor's true name will disclose a filing which contains an error. In the case of *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir. 1981), the financing statement and the underlying security agreement improperly identified the debtor as the partnership, McCauley's Reprographics and Mapping, which preceded the corporation McCauley's Reprographics, Inc. The court of appeals agreed with the bankruptcy court and reversed the district court's opinion that the financing statement was not seriously misleading.

On the other hand, the Court of Appeals for the Fifth Circuit has held that filing under the trade name "Elite Boats, Division of Glasco, Inc." as opposed to the legal corporate name "Glasco, Inc." was not seriously misleading. *Matter of Glasco, Inc.,* 642 F.2d 793 (5th Cir. 1981). The filing was not cross-indexed but the majority in this

---

8. There is nothing in the reported opinion which suggests that the Transfer of Equity document which was filed satisfied the requirements of a financing statement.

split decision emphasized that the debtor did business in only one name (to wit, "Elite Boats, Division of Glasco, Inc."). Based on this finding, the majority concluded that filing under the sole name by which the debtor conducted its business was not misleading because a reasonably prudent creditor would have requested a lien search in the name of "Elite Boats" as well as in the legal corporate name of "Glasco, Inc."

The majority noted that there was a critical distinction between the case before it and cases in which other courts had found that a financing statement filed under the trade name of an individual was insufficient to perfect a security interest. In the latter cases:

> [A] single debtor is necessarily held out to the credit community under two names, that of the individual and of the business. The individual's credit for personal needs is unrelated to the business. A personal creditor would not necessarily be aware of the business or trade name, and thus may not discover security interests filed solely under the business name. *Id.* at 796.

Judge Tuttle entered a dissenting opinion criticizing the majority for placing an unfair burden upon parties who must rely upon the filing system. Judge Tuttle pointed out that one searching the files for Glasco, Inc. would not normally discover a filing under Elite Boats. He further noted that U.C.C. § 9–402 requires no more than a search under the legal name of the debtor. Quoting from the dissenting opinion:

> Searching under a trade name would be completely unnecessary but for the majority's opinion. From now on in this Circuit, potential creditors must undertake to discover trade names and to conduct additional searches in order to avoid a judicial determination that they lacked diligence. And even if they follow such precautions they might yet overlook one trade name and face potentially expensive litigation over whether they should have known about that trade name. *Matter of Glasco, Inc.,* 642 F.2d 793, 798 (Tuttle, J. dissenting).

### III

None of the foregoing cases is directly on point insofar as the case before the court. However, this court concurs with the observation from *Osborn,* quoted hereinabove, concerning the unlimited number of trade names which might be employed by a single debtor. Indeed, the instant case presents a prime example. The debtor Moore has used no less than seven trade names in the conduct of his business. The potential for deception by a dishonest debtor or for honest mistakes is increased if a creditor files under a trade name not sufficiently similar to the actual name of the debtor to ensure that a lien search in the actual name of the debtor will reveal the trade name filing.

At least one court has announced that the majority view is that in the case of a sole proprietorship the financing statement must be filed under the actual name of the debtor and not under either an assumed name or a trade name. *Barton v. ITT Diversified Credit Corp. (In re Skinner),* 22 U.C.C.Rep.Serv. 1286 (Bankr.W.D.Mich. 1977). Filing in the actual name of the debtor, however, is not absolutely necessary in a case in which the trade name is substantially similar to the debtor's name and that name is uncommon. For example, consider the surname "Wishart." Judge Nims has noted: "While one may be tempted to hold that 'Wishart Equiment Co.' would readily appear to a party looking for 'Horace Wishart,' the problems are apparent when one thinks of John Albert Smith doing business as Smith Plumbing Co." *In re Wishart,* 10 U.C.C.Rep.Serv. 1296, 1298 (Bankr.W.D.Mich.1972). Considering the desirability of certainty in the commercial lending arena, a secured creditor should always file the financing statement so that it will be indexed under the actual name of the debtor.

The court notes that there is no Tennessee state court decision on the issue in the instant case. However, the Court of Appeals for the Middle Section has recently considered the sufficiency of a financing statement indexed under a partnership

name. In *American City Bank v. Western Auto Supply*, 631 S.W.2d 410 (Tn.Ct.App. 1981), the financing statement of the defendant Western Auto Supply was indexed under "Williamson." The secured debtor was the partnership of Williamson, Knoer and York. Subsequent to the filing of Western Auto's financing statement, York purchased the interest of his partners, thereby becoming the sole owner of the Tullahoma Western Auto Store. York obtained a loan from the plaintiff American City Bank to finance the purchase of his partners' interests. The loan from American City Bank was secured by a security interest in the store's inventory, accounts receivable, chattel paper, contract rights, and general intangibles. York neglected to inform American City Bank that the partnership had previously granted a security interest in the same property to Western Auto.

York defaulted on his obligations to Western Auto and voluntarily surrendered the collateral to Western Auto. The trial judge held that Western Auto's financing statement did not comply with the requirements of T.C.A. § 47–9–402 because it was seriously misleading.

The court of appeals noted that a partnership may be a debtor under Tennessee's version of the Uniform Commercial Code. The appellate court reversed the holding of the trial judge since the partnership was in fact Western Auto's debtor and the financing statement was properly indexed to perfect the security interest against the partnership debtor.

In *dictum*, the court noted: "There is substantial authority for the proposition that a filing under an assumed name only would be insufficient. *See, In re Osborn*, 6 U.C.C.Rep.Serv. 227 (Bankr.W.D.Mich. 1969)." 631 S.W.2d at 416. The court also stated:

> The U.C.C. is to be liberally construed and applied to promote its underlying purposes and policies, one of which is to provide a system of notice filing to perfect security interests... To require the use of the real name of the debtor only

meets an additional purpose of the Code; that is "to simplify, clarify and modernize the law governing commercial transactions."

... 631 S.W.2d at 417.

While it is true that the case did not involve a trade name filing as in the present case, the court of appeals opinion is sufficiently indicative of the result that would likely be reached by a court of the State of Tennessee. This Court concludes that the defendant's security interest is unperfected as the result of the financing statement being filed in one of the debtor's trade names only—and not the name of the debtor. It does not appear that a reasonably prudent creditor would discover the defendant's financing statements filed under the name of Moore's Welding & Mining Co. if a lien search was run in the name of Charlie Moore. It follows that this Court cannot say that the financing statements relied upon by the defendant are not seriously misleading.

T.C.A. § 47–9–403(4) requires the filing officer to "index statements according to the name of the debtor." The defendant had the opportunity to properly file in the name of the debtor but it failed to do so. As pointed out by the trustee, the defendant was aware of the financing statement of Stowers Machinery Corporation, whose secured interest was satisfied with proceeds from collateral covered by a validly perfected security interest. Stowers had filed its financing statement under the name "Charlie Moore d/b/a Moore's Welding & Mining Co." There was no reason for the defendant not to have done likewise, particularly in consideration of the fact that the debtor can sign his name but is unable to read.

The defendant AmeriTrust is not rescued by the fortuity that the interests of General Electric Credit Corporation and Stowers are still matters of record. The issue in this case is whether or not the financing statements of the defendant serve to perfect its security interest as against the trustee in bankruptcy. In the opinion of this Court, considering the desirability of certainty in commercial transactions, the Court must

conclude that they do not. The interest of the defendant is unperfected and subordinate to the rights of the trustee under 11 U.S.C. § 544, T.C.A. § 47–9–301(1)(b)(3).[9]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

**9.** Section 9–402 of the 1972 version of the Uniform Commercial Code, though inapposite, includes provisions not found in the 1962 version. Subsection (7) provides in part: "A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names. . . ."

Comment 7 provides: "Subsection (7) undertakes to deal with some of the problems as to who is the debtor. In the case of individuals, it contemplates filing only in the individual name, not in a trade name. . . . Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system."